## Commonwealth vs. Benjamin Cruz.

Suffolk. December 9, 2010. - April 19, 2011.

Present: Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.[1]

*Controlled Substances. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Threshold police inquiry, Probable cause, Automobile. *Constitutional Law,* Search and seizure, Investigatory stop, Reasonable suspicion, Probable cause. *Threshold Police Inquiry. Probable Cause. Statute,* Construction.

A Boston Municipal Court judge did not err in allowing a criminal defendant's pretrial motion to suppress evidence found by police on the defendant, a passenger in a stopped automobile, as well as an admission made by the defendant to the police, where, although the officers had properly detained the vehicle to issue a traffic citation and, upon detecting the odor of burnt marijuana, permissibly asked the driver whether he had been smoking marijuana, there was no basis on which the police could order the defendant out of the vehicle without at least some other additional fact beyond the mere odor of burnt marijuana, given that the odor of burnt marijuana alone can no longer provide police officers with reasonable suspicion that criminal activity is underway or with probable cause to believe that a criminal amount of contraband is present, in light of the enactment of G. L. c. 94C, §§ 32L-32N, inserted by St. 2008, c. 387, §§ 2-4, which decriminalized possession of less than one ounce of marijuana. [463-477] Cowin, J., dissenting.

Complaint received and sworn to in the West Roxbury Division of the Boston Municipal Court Department on June 25, 2009.

A pretrial motion to suppress evidence was heard by *Mary Ann Driscoll,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Botsford,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court. The Supreme Judicial Court granted an application for direct appellate review.

[1]Justice Cowin participated in the deliberation on this case and authored the dissenting opinion prior to her retirement.

*Helle Sachse*, Assistant District Attorney (*Lauren Bernath Moore*, Assistant District Attorney, with her) for the Commonwealth.

*Scott Michelman*, of California (*Jay Rorty*, of California, & *John Reinstein* with him) for the defendant.

*Michael D. Cutler & Steven S. Epstein*, for National Organization for the Reform of Marijuana Laws, amicus curiae, submitted a brief.

*Paul R. Rudof & Ryan M. Schiff*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. After a single justice of this court allowed the Commonwealth's application for an interlocutory appeal, we granted the defendant's application for direct appellate review in order to decide an issue of first impression concerning the impact, if any, G. L. c. 94C, §§ 32L-32N, inserted by St. 2008, c. 387, §§ 2-4, which decriminalized possession of less than one ounce of marijuana, has on certain aspects of our search and seizure jurisprudence. The defendant, Benjamin Cruz, was charged with one count of possession of a class B controlled substance with the intent to distribute, G. L. c. 94C, § 32A (*a*); possession of a class B controlled substance, G. L. c. 94C, § 34; and committing a controlled substances violation in a school zone, G. L. c. 94C, § 32J. The police seized "crack" cocaine from the defendant, a passenger in a stopped automobile, after a police officer, detecting the odor of burnt marijuana inside the vehicle, issued an order for the defendant to exit it.

Prior to trial, the defendant filed a motion to suppress the crack cocaine, as well as an admission he made to the officer. After an evidentiary hearing, a judge in the West Roxbury Division of the Boston Municipal Court Department allowed the defendant's motion. The Commonwealth petitioned a single justice of this court arguing that the motion judge erred, as a matter of law, in granting the defendant's motion. Because we discern no permissible basis on which the police could order the defendant out of the automobile without at least some other additional fact beyond the mere odor of burnt marijuana to bolster a reasonable suspicion of actual *criminal* activity, we affirm the

judge's allowance of the motion to suppress the admission and the crack cocaine, although on slightly different reasoning.

1. *Facts.* We summarize the facts as found by the judge, supplemented by uncontroverted facts from the record of the hearing.[2] *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007). On June 24, 2009, Officers Christopher Morgan and Richard Diaz were in the Hyde Square neighborhood of the Jamaica Plain section of Boston.[3] Patrolling in plain clothes and an unmarked Ford Crown Victoria automobile,[4] the officers drove down Sunnyside Street at approximately 5 P.M., and saw a vehicle parked in front of a fire hydrant. The vehicle's windows were rolled down and it was light outside. Inside, the officers could see a driver and the defendant, who was sitting in the front passenger seat. As the officers drove down the street, Officer Diaz saw the driver light a small, inexpensive cigar that is commonly known to mask the odor of marijuana smoke.

Both officers recognized the defendant as a neighborhood resident who lived on Sunnyside Street. Officer Morgan testified that he had previously seen the defendant smoking a marijuana "blunt," but the defendant was not known to either officer as a dangerous person, involved in any gang-related activity or violence. Neither officer was aware that either the driver or the defendant had ever been arrested. In fact, Officer Diaz had spoken to the defendant, a nineteen year old man, on several previous occasions about remaining out of trouble. Diaz had suggested ways for the defendant to exempt himself from the "crowd" and encouraged him to do more than "hanging out."

Pulling up next to the car, Officer Morgan asked the driver to explain why he was parked in front of the fire hydrant, a civil motor vehicle violation. See Traffic Rules and Regulations of the City of Boston art. 4, § 1(6) (2003). The driver replied that he was waiting for his uncle, who lived in a house on Sunnyside Street. While the officers were stopped next to the car,

---

[2]The judge made findings concerning the defendant and the driver of the automobile, but we will refer to the driver only where necessary.

[3]Hyde Square is home to the "Mozart Associates," a street gang. Narcotic and firearms arrests are common in this area.

[4]The judge found that although they did not identify themselves to the defendant, he understood that they were police officers.

Officer Morgan saw the defendant smoking a cigar. At this point, both officers got out of their unmarked cruiser and walked toward the car. Officer Morgan approached the driver's side, and Officer Diaz went to the passenger side. From the driver's side, Officer Morgan could smell a "faint odor" of burnt marijuana.[5]

Officer Morgan noticed that the driver was "very nervous, had trouble breathing" and "it almost looked like he was panicking." When asked whether he had been smoking marijuana, the driver replied that he had smoked "earlier in the day." Morgan asked the driver if there was anything inside the car that the officers "should know about." The driver responded, "No." Meanwhile, Officer Diaz saw that the defendant appeared "nervous" and made little eye contact with Diaz, choosing to look straight ahead or down. Neither officer saw any contraband or weapons within plain view in the car. There was no evidence that either the driver or the defendant made any furtive gestures or threatening movements.[6]

The officers neither cited the driver for parking in front of a fire hydrant nor asked for his license and registration. Neither officer conducted any field sobriety tests to determine whether the driver was presently under the influence of marijuana. Instead, the officers called for backup, and four additional officers arrived on the scene in two marked cruisers. Once backup arrived, and based on "the odor of marijuana and just the way they were acting," both the driver and the passenger were ordered out of the car by Officers Morgan and Diaz.[7] As the defendant

---

[5]Both officers testified to their experience and training in detecting the odor of marijuana.

[6]Officer Diaz testified that he, too, could smell the odor of marijuana. The judge found that there was no specific testimony that the odor was coming from the defendant or the passenger's side, but just the area in general. For our analysis, whether the odor came directly from the defendant or just the area in general is a "distinction without a difference, given the confined area represented by the passenger compartments of most automobiles." *Commonwealth* v. *Garden*, 451 Mass. 43, 47 n.5 (2008).

[7]The judge found the officers ordered the driver out of the car, at least partially, "for officer safety" and "due to the high-crime area." At the hearing, Officer Diaz testified that he and Morgan ordered both men out of the car "because of the odor of marijuana." The subjective intentions of police are irrelevant so long as their actions were objectively reasonable. See *Commonwealth* v. *Murdough*, 428 Mass. 760, 762, 765 (1999).

stepped out of the car, Diaz asked him if he had "anything on his person." In the presence of the six police officers, the defendant told Diaz he had "a little rock for myself" in his pocket. Diaz reached into the defendant's pocket and retrieved the item, which Diaz estimated to be approximately four grams of crack cocaine. No Miranda warnings were given to either the defendant or the driver before the crack cocaine was seized.

The judge concluded that the police permissibly approached the car because it was parked in front of a fire hydrant, a civil traffic violation. She found, however, that the officers should not have ordered the defendant out of the car. The officers could not have reasonably feared for their safety considering that the stop occurred during daylight, the defendant made no furtive or threatening movements, and the defendant was not known to the officers from previous arrests or a reputation for violence.

Further, the judge concluded that the officers could not have ordered the defendant out of the car based on the odor of burnt marijuana alone. She explained that, since the passage of G. L. c. 94C, § 32L, decriminalizing possession of one ounce or less of marijuana, the odor of burnt marijuana "coupled with the driver's statement that he had been smoking earlier in the day" suggested that any marijuana that remained would be less than one ounce.

Finally, the judge found that although G. L. c. 94C, § 32L, has no effect on the crimes of possession with intent to distribute or operating while under the influence of marijuana, "there was no probable cause to believe that any of those offenses were being committed." Without probable cause that the defendant or the driver was committing any criminal offense, she concluded, the police were not justified in ordering the defendant out of the car.

2. *Discussion.* The Commonwealth argues that despite the decriminalization of possessing one ounce or less of marijuana, the odor of burnt marijuana may still provide the police with probable cause or, at least, reasonable suspicion that a crime is occurring, which justifies the exit order to the defendant. The Commonwealth further contends that once the defendant was validly ordered to get out of the car, the officer could properly ask whether he had any contraband on his person without the need for Miranda warnings.

"When reviewing the allowance of a motion to suppress, we show substantial deference to the judge's legal conclusions . . . but independently review the application of constitutional principles to the facts" (citations omitted). *Commonwealth* v. *Torres*, 433 Mass. 669, 671-672 (2001). Although we have held in the past that the odor of marijuana alone provides probable cause to believe criminal activity is underway,[8] we now reconsider our jurisprudence in light of the change to our laws. On November 4, 2008, voters approved St. 2008, c. 387, §§ 2-4, pursuant to the provisions of art. 48, The Initiative, Part V, § 1, as amended by art. 81, § 2, of the Amendments to the Massachusetts Constitution. This initiative was codified at G. L. c. 94C, §§ 32L-32N, and entitled, "An Act establishing a sensible State marihuana policy." This act changed the status of the possession of one ounce or less of marijuana from a criminal to a civil offense. It became effective on December 4, 2008.[9] Our analysis must give effect to the clear intent of the people of

[8]See e.g., *Commonwealth* v. *Garden, supra* at 47-48, quoting *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177 (2006) ("the perception by a police officer with training and experience in narcotics detection of a 'strong, fresh odor of burnt marijuana emerging from a motor vehicle provide[s] probable cause to search the vehicle' "). See *Commonwealth* v. *Correia, supra* ("After detecting the 'pretty heavy' odor of burnt marijuana, the officers had probable cause to believe that marijuana had recently been smoked in the vehicle and that evidence of marijuana use and possession would be found within it. The officers were entitled to search for such evidence . . . . Such a search reasonably could include issuing an exit order to the defendant to facilitate the search of the vehicle . . .").

[9]General Laws c. 94C, § 32L, states:

"Notwithstanding any general or special law to the contrary, possession of one ounce or less of marihuana shall only be a civil offense, subjecting an offender who is eighteen years of age or older to a civil penalty of one hundred dollars and forfeiture of the marihuana, but not to any other form of criminal or civil punishment or disqualification. An offender under the age of eighteen shall be subject to the same forfeiture and civil penalty provisions [subject to other conditions imposed].

"Except as specifically provided in 'An Act Establishing A Sensible State Marihuana Policy,' neither the Commonwealth nor any of its political subdivisions or their respective agencies, authorities or instrumentalities may impose any form of penalty, sanction or disqualification on an offender for possessing an ounce or less of marihuana. By way of illustration rather than limitation, possession of

the Commonwealth in accord with art. 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution.

a. *Initiation of the stop.* It is uncontested that the officers validly "stopped" the car for parking in front of a fire hydrant, a civil traffic violation. See *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980) (officer may validly stop a vehicle committing a traffic violation); G. L. c. 90C, § 2 (officer may approach parked car committing traffic violation and issue ticket).

Thus, the officers' presence at the side of the car was appropriate. Detaining a vehicle to issue a traffic citation, however, must "last no longer than reasonably necessary to effectuate the purpose of the stop." See *Commonwealth* v. *Garden*, 451 Mass. 43, 46 (2008), quoting *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. 638, 643 (2001). Once the officers approached the car, they were required to complete the parking citation process and, barring other reasons to detain the occupants, leave them free

one ounce or less of marihuana shall not provide a basis to deny an offender student financial aid, public housing or any form of public financial assistance including unemployment benefits, to deny the right to operate a motor vehicle or to disqualify an offender from serving as a foster parent or adoptive parent. Information concerning the offense of possession of one ounce or less of marihuana shall not be deemed 'criminal offender record information,' 'evaluative information,' or 'intelligence information' as those terms are defined in [G. L. c. 6, § 167], and shall not be recorded in the Criminal Offender Record Information system.

"As used herein, 'possession of one ounce or less of marihuana' includes possession of one ounce or less of marihuana or tetrahydrocannabinol and having cannabinoids or cannibinoid metabolites in the urine, blood, saliva, sweat, hair, fingernails, toe nails or other tissue or fluid of the human body. Nothing contained herein shall be construed to repeal or modify existing laws, ordinances or bylaws, regulations, personnel practices or policies concerning the operation of motor vehicles or other actions taken while under the influence of marihuana or tetrahydrocannabinol, laws concerning the unlawful possession of prescription forms of marihuana or tetrahydrocannabinol such as Marinol, possession of more than one ounce of marihuana or tetrahydrocannabinol, or selling, manufacturing or trafficking in marihuana or tetrahydrocannabinol. Nothing contained herein shall prohibit a political subdivision of the Commonwealth from enacting ordinances or bylaws regulating or prohibiting the consumption of marihuana or tetrahydrocannabinol in public places and providing for additional penalties for the public use of marihuana or tetrahydrocannabinol."

from further police restraint. See *Commonwealth* v. *King*, 389 Mass. 233, 244 (1983).

Because the stop did not end with a written citation and an instruction to the driver to move his vehicle away from the hydrant, further investigation by the officers required additional suspicious conduct. See *Commonwealth* v. *Feyenord*, 445 Mass. 72, 77 (2005), cert. denied, 546 U.S. 1187 (2006), quoting *Commonwealth* v. *King, supra* at 243 ("In order to expand a threshold inquiry of a motorist and prolong his detention, an officer must reasonably believe that there is further criminal conduct afoot, and that belief must be based on 'specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience' "). Once in the process of making a valid stop for a traffic violation, officers are not required to "ignore what [they] see[], smell[] or hear[]." *Commonwealth* v. *Bartlett*, 41 Mass. App. Ct. 468, 471 (1996). When Officer Morgan approached the driver's side window and detected the odor of burnt marijuana, asking the driver whether he had been smoking marijuana was permissible because the officers could potentially have issued the driver a civil citation pursuant to G. L. c. 40, § 21D.

b. *The exit order.* Not all routine traffic stops justify ordering the driver, much less the passenger, out of a stopped vehicle.[10] There are three scenarios in which an exit order issued to a passenger in a validly stopped vehicle is justified. First, an exit order is justified if "a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 661 (1999), quoting *Commonwealth* v. *Santana*, 420 Mass. 205, 212-213 (1995). Second, the officers could have developed reasonable suspicion (based on articulable facts) that the defendant was engaged in criminal activity separate from any offense of the driver. See

[10]Article 14 of the Massachusetts Declaration of Rights may, in some circumstances, provide more protection than the Fourth Amendment to the United States Constitution. See *Commonwealth* v. *Upton*, 394 Mass. 363, 373 (1985). Although officers may issue an exit order to passengers in a stopped vehicle as routine practice in the Fourth Amendment context, see *Maryland* v. *Wilson*, 519 U.S. 408, 415 (1997), they may not do so in this Commonwealth. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 662-663 (1999).

*Commonwealth* v. *Bostock*, 450 Mass. 616, 621 (2008); *Commonwealth* v. *Torres*, 424 Mass. 153, 157-158 (1997). Third, the officers could have ordered the defendant out of the car for pragmatic reasons, e.g., to facilitate an independently permissible warrantless search of the car under the automobile exception to the warrant requirement.[11] See *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990); *Commonwealth* v. *Correia*, 66 Mass. App. Ct. 174, 177-178 (2006).

We need not address whether the exit order was justified on the basis of officer safety because the Commonwealth does not contest the motion judge's finding that it was not justified on this basis.[12] We turn, therefore, to the second permissible basis for issuing the exit order: whether the officers had reasonable suspicion to believe that the defendant was engaged in criminal activity. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974) (to justify further investigative detention of passenger when no safety concerns at issue police must reasonably suspect that passenger himself has committed, was committing, or was about to commit a crime). See also *Commonwealth* v. *Torres, supra* at 157 (as passenger in stopped vehicle, defendant could reasonably expect to remain free from investigative fray unless his own behavior aroused suspicion of criminal conduct).

The Commonwealth argues that the stop's location, a high crime neighborhood; the defendant's nervous demeanor; and the occupants' sharing of a cigar are facts that bolster the suspicion of criminal activity first aroused by the odor of burnt marijuana. We disagree.

The stop's location, although potentially relevant to an objective assessment of officer safety, cannot justify reasonable suspicion to believe a person is involved in criminal activity. See *Commonwealth* v. *Santos*, 65 Mass. App. Ct. 122, 125 (2005), quoting *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001) (traffic stop taking place in high crime area must be "considered with some caution because many honest, law-abiding citizens live and work in high crime areas"). Further,

---

[11]The automobile exception may apply even if the vehicle is not currently mobile. See *Commonwealth* v. *Nicholson*, 58 Mass. App. Ct. 601, 606-607 & n.7 (2003).

[12]Even if the Commonwealth had contested it, we agree with the judge that the officers could not have reasonably feared for their safety.

the officers knew that the defendant lived on Sunnyside Street, the very street on which the encounter occurred. Surely the officers could not find it suspicious that the defendant was spending time on his own street. Moreover, the defendant's nervous demeanor cannot be the grounding factor on which to base suspicion of criminal activity. See *Commonwealth* v. *DePeiza,* 449 Mass. 367, 372 (2007). It is common, and not necessarily indicative of criminality, to appear nervous during even a mundane encounter with police, even though, as a passenger, the consequence of receiving a citation is not personal. Here, even though the defendant may have recognized Officer Diaz, a myriad number of innocent reasons other than hiding criminal contraband may more readily explain why a nineteen year old man would appear nervous while being addressed by a police officer. See *United States* v. *McKoy,* 428 F.3d 38, 40 (1st Cir. 2005) ("Nervousness is a common and entirely natural reaction to police presence . . .").

The Commonwealth's contention that, because the occupants were sharing a small cigar, known to the officers to mask the odor of marijuana smoke, they were also sharing a marijuana cigarette, lacks merit. The Commonwealth's assertion of such sharing is based on Diaz's noticing the driver light the cigar as the officers drove down the street and Morgan's noting the defendant smoking the cigar once the officers had stopped. The judge made no finding whether she credited the inference that the occupants shared the cigar. Further, there was no evidence that the occupants shared marijuana. The driver's admission to smoking "earlier in the day" does not require, as the Commonwealth argues, the inference that the defendant smoked as well. Even if we assume the occupants shared the cigar, it does not necessarily follow that because the occupants shared one legal item, they shared another illegal substance. We will not infer the defendant's participation solely from the driver's admission concerning his own conduct at some point earlier in the day. See *Commonwealth* v. *Wren,* 391 Mass. 705, 707 (1984) (suspicion must be based on reasonable inferences; "hunch will not suffice").[13]

---

[13]Because we do not find any evidence to support an inference that the occupants "shared" marijuana, we need not reach the Commonwealth's contention that sharing is equivalent to "distribution," which remains criminal under the statute.-

The last factor on which the Commonwealth relies to justify the officers' reasonable suspicion that the defendant was engaged in criminal activity is the "faint odor" of burnt marijuana. We note at the outset of our analysis that the lesser standard of reasonable suspicion is tied, by its very definition, to the suspicion of *criminal*, as opposed to merely infractionary, conduct. See *Commonwealth* v. *Silva, supra*. Articulable facts, then, must demonstrate a suspicion that the defendant possessed[14] more than one ounce of marijuana, because possession of one ounce or less of marijuana is not a crime. See G. L. c. 94C, § 32L. There are no facts in the record to support a reasonable suspicion that the defendant possessed more than one ounce of marijuana.[15] We conclude that, to order a passenger in a stopped vehicle to exit based merely on *suspicion* of an offense, that offense must be criminal.[16]

Here, there could be no suspicion of a criminal offense.[17]

[14]The police also could have provided sufficient facts to demonstrate a reasonable suspicion that the defendant was "selling, manufacturing or trafficking" marijuana. G. L. c. 94C, § 32L. They did not.

[15]For example, the officers did not see a scale, plastic baggies, or any other drug paraphernalia traditionally associated with the sale of marijuana. They did not smell a strong odor of fresh marijuana, another fact that could lend credibility to the suspicion that more than one ounce of marijuana was present. See *Commonwealth* v. *MacDonald, ante* 148, 150-153 (2011).

[16]An exit order is a further intrusion on a person's liberty, not to be taken lightly. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 663 (1999) ("Such an intrusion into a driver or a passenger's privacy is not minimal"). The intrusion should be proportional to the wrong suspected. See *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985), citing *Commonwealth* v. *Bottari*, 395 Mass. 777 (1985). As citizens, we expect that if we commit a civil infraction we will pay a fine; we do not expect a significant intrusion into our privacy and liberty. See *State* v. *Duncan*, 146 Wash. 2d 166, 177 (2002) ("When investigating a civil infraction an officer is not seeking to arrest an individual, but rather to issue a citation. In light of the lower risk to society involved with civil infractions" less intrusive investigative measures are warranted than would be for criminal offenses).

[17]The Commonwealth argues on appeal that the odor of burnt marijuana on the driver's side of the vehicle was at least one articulable fact to pique the officer's suspicion that the crime of "operating 'while under the influence,'" quoting G. L. c. 90, § 24, had occurred. At the motion hearing, however, Officer Morgan testified that he could not recall whether the engine was running. Nor do we know from the record how long the vehicle had been parked. In these circumstances, we cannot determine whether the officers had reasonable suspicion to believe the driver was "operating" while under the influence,

When the people of this Commonwealth answered "yes" to Question 2 on the 2008 ballot,[18] the offense of possessing one ounce or less of marijuana changed from being a criminal to a civil offense.[19] See G. L. c. 94C, § 32L ("Notwithstanding any general or special law to the contrary, possession of one ounce or less of marihuana shall *only* be a civil offense . . ." [emphasis added]). The ballot informed voters that a "yes vote would replace the criminal penalties for possession of one ounce or less of marijuana with a new system of civil penalties." Information for Voters: 2008 Ballot Questions, Question 2: Law Proposed by Initiative Petition, Possession of Marijuana. The arguments in favor of a "yes vote," written by the Committee for Sensible Marijuana Policy[20] and presented on the ballot, told voters that the change would remove the threat of various criminal "sanctions" for those who possess one ounce or less of marijuana and instead impose a "$100 fine, similar to a speeding ticket." *Id.* It also explained that the police would be "freed up" by the new law to focus on serious crimes and "taxpayers would save $30 million a year in arrest costs." *Id.* In contrast, arguments against the change in the law warned voters that "[m]arijuana

sufficient to order the driver out of the car. See *Commonwealth* v. *Eckert*, 431 Mass. 591, 599, 600 (2000) (vacating order suppressing results of field sobriety tests and remanding case because "if the judge disbelieved the trooper's testimony about [whether the engine was running and the defendant had slurred speech], then the facts would not warrant a reasonable suspicion that the defendant was engaged in conduct that was either illegal or a threat to public safety, and the results of the field sobriety tests would properly be suppressed as the fruits of an illegal search or seizure"). Further, the judge found that "there was no probable cause to believe" that the offense of operating under the influence had been committed. Although we agree with the dissent that, in different circumstances, the officers could have ordered the driver out of the car based on a reasonable suspicion that the crime of operating while under the influence had been committed, this does not address the propriety of the officers ordering the defendant out of the vehicle.

[18]Return of Votes for Massachusetts State Election Nov. 4, 2008.

[19]The ballot question was a law proposed by initiative petition, one of four ways the Massachusetts Constitution permits individuals to directly affect the State laws. See art. 48 of the Amendments to the Massachusetts Constitution. See Secretary of the Commonwealth, A Guide for Circulating Petitions State Ballot Question Petitions at 2 (rev. April 2009). The purpose of art. 48 is to allow the people "to enact laws directly without being thwarted by an unresponsive Legislature." *Opinion of the Justices*, 375 Mass. 795, 801-802 (1978).

[20]This organization also authored the proposed law.

decriminalization is an endorsement of substance abuse and dangerous criminal activity . . . ." *Id.*[21] We assume that before casting their votes, voters read the arguments "for" and "against," as well as the new law itself. Because we have the benefit of the written explanation in support of the initiative, the people's intent in answering Question 2 in the affirmative was clear: possession of one ounce or less of marijuana should not be considered a serious infraction worthy of criminal sanction.

Not only has the penalty scheme for possession of one ounce or less of marijuana changed, as the Commonwealth concedes, but the status of this conduct changed as well. By mandating that possession of such a small quantity of marijuana become a civil violation, not a crime, the voters intended to treat offenders who possess one ounce or less of marijuana differently from perpetrators of drug crimes. See G. L. c. 94C, § 32L.[22] The statute specifically states that "neither the Commonwealth" nor any other relevant authority "may impose any form of penalty, sanction or disqualification on an offender for possessing an ounce or less of marihuana." *Id.* It then provides examples of prohibited sanctions "[b]y way of illustration rather than limitation," that are commonly associated with criminal conduct. See note 9, *supra.* The statute does away with traditional criminal consequences, including the long-term and embarrassing effect that a criminal record has on employment or applying for school loans, demonstrating the intent of the voters to change the societal impact of possessing one ounce or less of marijuana.

Our conclusion that the status of the offense has changed is supported by the statute's requirement that offenders under G. L. c. 94C, §§ 32L-32N, be treated in accordance with G. L. c. 40, § 21D, which concerns noncriminal disposition violations of municipal ordinances, bylaws, rules and regulations. This statute governs civil violations, not crimes. A "violation" is

[21]The argument "against," presented on the ballot, was written by the president of the Massachusetts District Attorneys Association. See Information for Voters: 2008 Ballot Questions, Question 2: Law Proposed by Initiative Petition, Possession of Marijuana.

[22]We perform statutory construction as we would any other statute adopted in the normal legislative process, according to its plain meaning and in accord with the intent of its drafters. See generally *Commonwealth* v. *Raposo,* 453 Mass. 739, 745-746 (2009).

defined as "[a]n infraction or breach of the law; a transgression." Black's Law Dictionary 1705 (9th ed. 2009).[23] Further, G. L. c. 94C, § 32N, provides a clear directive to police departments handling violators to treat commission of this offense as non-criminal.[24] We conclude that the entire statutory scheme also implicates police conduct in the field. Ferreting out decriminalized conduct with the same fervor associated with the pursuit of serious criminal conduct is neither desired by the public nor in accord with the plain language of the statute.

Given our conclusion that G. L. c. 94C, §§ 32L-32N, has changed the status of possessing one ounce or less of marijuana from a crime to a civil violation, without at least some other additional fact to bolster a reasonable suspicion of actual *criminal* activity, the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity to justify an exit order. See *Commonwealth* v. *Gaynor*, 443 Mass. 245, 256 (2005), quoting *Florida* v. *Jimeno*, 500 U.S. 248, 250 (1991) ("The touchstone of the Fourth Amendment is reasonableness").[25]

We do not agree with the defendant's assertion that our hold-

---

[23]In contrast, a "crime" is defined as "[an] act that the law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding." Black's Law Dictionary 427 (9th ed. 2009).

[24]"The person in charge shall also issue books of non-criminal citation forms to the department's officers which conform with the provisions of this [s]ection and [G. L. C. 40, § 21D]. . . . Any civil penalties imposed under the provisions of 'An Act Establishing A Sensible State Marihuana Policy' shall inure to the city or town where the offense occurred." G. L. c. 94C, § 32N.

[25]As the defendant recounts, the initiative petition was widely publicized and its debate, as well as its outcome, was closely followed. It is therefore even more likely after the new law than before that persons illegally possessing marijuana for personal use only will take care to restrict possession to an amount of one ounce or less, as not all persons who smoke marijuana are willing to risk criminal sanction.

The dissent's position, *post* at 478-479, that, despite the new law, the odor of burnt marijuana may still serve as the basis for reasonable suspicion that criminal activity involving marijuana is underway would circumvent the purpose of the decriminalization law. It is true, as the dissent states, that decriminalization has no effect on the distinctiveness of marijuana's odor; but the new law does affect the reasonableness of the officer's actions with respect to that odor. It is no longer reasonable for the smell of burnt marijuana alone to lead an officer to suspect that criminal activity is afoot, even if the odor is present in a so-called "high crime" neighborhood. Because the issue is not before us we leave to another day whether the appropriate police action in

ing is simply an extension of our line of cases concerning the reasonable suspicion standard where items that are not criminal to possess in all circumstances, such as hypodermic needles and guns, are at issue. See *Commonwealth* v. *Landry*, 438 Mass. 206, 210 (2002) ("Possessing a hypodermic needle is not necessarily a crime"; licensed physicians and private citizens "may lawfully possess hypodermic needles"); *Commonwealth* v. *Alvarado*, 423 Mass. 266, 270 (1996) ("carrying a concealed weapon is not, standing alone, an indication that criminal conduct has occurred or is contemplated"); *Commonwealth* v. *Toole*, 389 Mass. 159, 163 (1983) ("carrying a .45 caliber revolver is not necessarily a crime"). These cases are inapposite because, in proper circumstances, possession of a licensed gun or a hypodermic syringe is legal. In contrast, possession of marijuana, in any amount, remains illegal; decriminalization is not synonymous with legalization. See G. L. c. 94C, § 31; G. L. c. 94C, § 34. Because marijuana remains unlawful to possess, any amount of marijuana is considered contraband. See Black's Law Dictionary, *supra* at 365 ("contraband" defined as "[g]oods that are unlawful to import, export, produce, or possess").

This brings us to the third scenario in which the officers could have validly ordered the defendant out of the car — pragmatic reasons. In this case, the Commonwealth argues that the officers had probable cause to search the vehicle, and the exit order was a permissible step to take in order to facilitate the search.[26] Generally, a warrant is required to conduct a search; several well-recognized exceptions exist. See *Commonwealth* v. *Anderson*, 406 Mass. 343, 346 (1989). Under the automobile exception, a warrantless search of an automobile is permitted when police have "probable cause to believe that a motor vehicle on a public way contains contraband or evidence of a crime, and exigent

---

this case would have been to issue the defendant, or at the very least the driver, who admitted to smoking marijuana "earlier in the day," a citation under G. L. c. 94C, § 32N, based solely on the odor of burnt marijuana.

[26]The judge concluded that the officers "intended to search the vehicle," and it was at least one justification for removing the defendant from the car. Her analysis ended there. See *Commonwealth* v. *Murdough*, 428 Mass. 760, 762, 765 (1999) (subjective intentions of police are irrelevant so long as their actions were objectively reasonable). After both the driver and the defendant were arrested, the car was searched, but no additional contraband was found.

circumstances make obtaining a warrant impracticable." *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990), quoting *Carroll* v. *United States*, 267 U.S. 132, 149 (1925).[27]

In contrast, therefore, to the requirement that criminality be suspected to effectuate an exit order under the reasonable suspicion standard, a warrantless search of an automobile may be based on probable cause that contraband is present. See *Commonwealth* v. *Cast, supra.* We have held that the odor of burnt marijuana is sufficient to believe that there is contraband in the car. See *Commonwealth* v. *Garden*, 451 Mass. 43, 47 (2008). See also *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982), and cases cited ("Probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction"). As the Commonwealth appears to argue, it follows then, that if the police have probable cause to believe that contraband, i.e., any amount of marijuana, exists in the car, the police may then validly conduct a warrantless search (and order any passengers out of the car to facilitate that search).

At least one court has adopted this reasoning. In *State* v. *Smalley*, 233 Or. App. 263, 265, 270-271 (2010), the Court of Appeals of Oregon determined that, despite the decriminalization of marijuana in small amounts for personal use, when an officer has probable cause, based on the odor of burnt marijuana, to believe that a validly stopped automobile contains any quantity of marijuana, a warrantless search is justified based on the likely presence of contraband. See *id.*[28] See also *State* v. *Kurokawa-Lasciak*, 237 Or. App. 492, 499 (2010) ("probable cause to believe a mobile vehicle contained less than an ounce of marijuana justifies a warrantless automobile search because even that noncriminal amount is 'contraband' ").

---

[27]See *Commonwealth* v. *Motta*, 424 Mass. 117, 124 (1997) ("when an automobile is stopped in a public place with probable cause, no more exigent circumstances are required by art. 14 beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle").

[28]The Court of Appeals of Oregon reasoned that, because the Oregon Supreme Court "signaled its understanding that the two things ['crime evidence' and 'contraband'] were not identical and that probable cause to believe in the presence of either could justify an automobile search," probable cause to believe that marijuana of any quantity is present in a validly stopped automobile justifies a warrantless search. *State* v. *Smalley*, 233 Or. App. 263, 270-271 (2010).

We are not persuaded by this reasoning. The standard used to determine the validity of a warrantless search is the same as that used by a magistrate considering the application for a search warrant. See *Whiteley* v. *Warden*, 401 U.S. 560, 566 (1971). See also *Carroll* v. *United States*, *supra* at 156 (when securing warrant not practicable, officers must still demonstrate to court requisite level of probable cause needed to obtain warrant).[29] In Massachusetts, search warrants are issued by magistrates "authorized to issue [them] in criminal cases." G. L. c. 276, § 2B.[30] Moreover, this court concluded more than 150 years ago:

"Search warrants were . . . confined to cases of public prosecutions, *instituted and pursued for the suppression of crime or the detection and punishment of criminals. . . .* The principles upon which the legality of such warrants could be defended, and the use and purpose to which, by the common law, they were restricted, were well known to the framers of our constitution. . . . Having this knowledge, it cannot be doubted that by the adoption of the 14th article of the Declaration of Rights it was intended strictly and carefully to limit, restrain and regulate the granting and issuing of warrants of that character to the general class of cases, in and to the furtherance of the objects of which they had before been recognized and allowed as

[29] Even though "we have long recognized that 'less stringent warrant requirements have been applied to vehicles,' " due to the exigency that the inherent mobility of a vehicle creates, the rationale for this lenience is that the contraband might be "moved away while a warrant is being sought." *Commonwealth* v. *Motta, supra* at 123, quoting *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 282 (1974), and *Commonwealth* v. *Cast*, 407 Mass. 891, 904 (1990).

[30] General Laws c. 276, § 2B, states in part:

"A person seeking a search warrant shall appear personally before a court or justice authorized to issue search warrants *in criminal cases* and shall give an affidavit in substantially the form hereinafter prescribed. Such affidavit shall contain the facts, information, and circumstances upon which such person relies to establish sufficient grounds for the issuance of the warrant. The person issuing the warrant shall retain the affidavit and shall deliver it within three days after the issuance of the warrant to the court to which the warrant is returnable. Upon the return of said warrant, the affidavit shall be attached to it and shall be filed therewith, and it shall not be a public document until the warrant is returned." (Emphasis added.)

> justifiable and lawful processes, and certainly not so to
> vary, extend and enlarge the purposes for and occasions on
> which they might be used . . . ." (Emphasis added.)

*Robinson* v. *Richardson*, 13 Gray 454, 456-457 (1859).

Here, no facts were articulated to support probable cause to
believe that a *criminal* amount of contraband was present in the
car. We conclude, therefore, that in this set of circumstances a
magistrate would not, and could not, issue a search warrant.[31]
See *Whiteley* v. *Warden*, *supra* ("standards applicable to the
factual basis supporting the officer's probable-cause assessment
at the time of the challenged . . . search are at least as stringent
as the standards applied with respect to the magistrate's
assessment"). Because the standard for obtaining a search war-
rant to search the car could not be met, we conclude that it was
unreasonable for the police to order the defendant out of the car
in order to facilitate a warrantless search of the car for criminal
contraband under the automobile exception.[32]

Our conclusion is in accord with our oft-repeated principle of
proportionality. See, e.g., *Commonwealth* v. *Moses*, 408 Mass.
136, 141 (1990), quoting *Commonwealth* v. *Borges*, 395 Mass.
788, 794 (1985) ("The degree of intrusiveness that is permitted
is that which is 'proportional to the degree of suspicion that
prompted the intrusion' "). In these circumstances, without
probable cause that a crime is being committed, we cannot

---

[31]We note that in other jurisdictions a search warrant could, potentially,
issue. See *United States* v. *Pugh*, 223 F. Supp. 2d 325, 330 (D. Me. 2002), cit-
ing *State* v. *Barclay*, 398 A.2d 794, 797 (Me. 1979) ("Under Maine law,
marijuana, even in an amount that would only give rise to a civil violation,
can be the legitimate object of a search warrant . . ."). In contrast, the Com-
monwealth has cited no law in Massachusetts permitting a search warrant to
issue solely based on probable cause that a civil violation has been committed.

[32]The Supreme Court of Minnesota used a similar analysis after the
decriminalization of small quantities of marijuana in its State. See Act of
March 11, 1976, c. 42, § 1, 1976 Minn. Laws 101, 102 (codified Minn. Stat.
§ 152.15, subd. 2[5] [1976]). In *State* v. *Ortega*, 770 N.W.2d 145, 149 n.2
(Minn. 2009), the court explained that although the odor of burnt marijuana
might provide probable cause to believe that a "non-criminal amount" of
marijuana exists, it cannot provide the basis for probable cause to arrest
because there is no probable cause to believe a *criminal* amount of marijuana
exists. Without probable cause for the underlying arrest, there is no probable
cause to support a "search-incident-to-arrest" as an exception to the warrant
requirement. *Id.*

condone such an intrusive measure as a warrantless search. See *Commonwealth* v. *Porter P.*, 456 Mass. 254, 274 n.19 (2010) (substantial invasion of privacy only permissible under art. 14 when it is reasonable). It also is supported by the intent of the ballot initiative, which was, in part, to free up the police for more serious criminal pursuits than the civil infraction of low-quantity marijuana possession. See Information for Voters: 2008 Ballot Questions, Question 2: Law Proposed by Initiative Petition, Possession of Marijuana. It is unreasonable for the police to spend time conducting warrantless searches for contraband when no specific facts suggest criminality.

3. *Conclusion.* Because the exit order issued to the defendant cannot be justified on any of the three permissible bases outlined above, the defendant's incriminating response to Officer Diaz's query whether he had "anything on his person," and the subsequent seizure of the crack cocaine itself must be suppressed. See *Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 (1978) (all evidence traceable to statement made before defendant illegally ordered out of car must be suppressed). See also *Commonwealth* v. *Loughlin*, 385 Mass. 60, 63 (1982) (evidence obtained as result of unconstitutional police conduct must be excluded from use at trial under "fruit of the poisonous tree" doctrine).

Accordingly, the allowance of the defendant's motion to suppress is affirmed.

*So ordered.*

Cowin, J. (dissenting). The police officers in this case properly approached, for a parking violation, a vehicle in which the defendant was a passenger. On reaching the vehicle, both officers smelled the odor of burnt marijuana. The vehicle was in a high crime area, and the driver and the defendant appeared nervous. The officers ordered the defendant out of the vehicle and he complied. When questioned, the defendant confessed that he had "crack" cocaine on his person.

Until now, our case law has been clear that the odor of burnt marijuana in a vehicle provides probable cause for a warrantless search. See *Commonwealth* v. *Garden*, 451 Mass. 43, 47-48 (2008). Today, the court holds the same evidence, even in

combination with other factors, insufficient to meet not only the probable cause standard but also the lower standard of "reasonable suspicion." According to the court, the justification for this change is the enactment of G. L. c. 94C, §§ 32L-32N, which decriminalizes the possession of small amounts of marijuana. That change in our laws, however, does not affect the conclusions that may reasonably be drawn by police whose sense of smell alerts them to the fact that marijuana is, or recently has been, present.

Consistent with art. 14 of the Massachusetts Declaration of Rights, a police officer may order a passenger to exit a vehicle when he has "a reasonable suspicion of criminal activity" on the part of that passenger. See *Commonwealth* v. *Bostock*, 450 Mass. 616, 621 (2008). Although reasonable suspicion must be based on "specific, articulable facts and inferences that follow from the officer's experience," even "[s]eemingly innocent activities taken together can give rise to reasonable suspicion." *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001), quoting *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000). An officer's reasonable suspicion justifies an inquiry and, if necessary, an exit order to determine whether probable cause exists to believe that criminal activity has occurred or is occurring.

Even though possession of a small amount of marijuana is now no longer criminal, it may serve as the basis for a reasonable suspicion that activities involving marijuana, that are indeed criminal, are underway. The essence of reasonable suspicion is that it justifies an inquiry that may result in establishing that no offense has occurred, or that one may have occurred, but there is insufficient evidence to proceed to probable cause. An inquiry that does not produce evidence that supports going further does not retroactively render unreasonable a suspicion that was reasonable at the time.

Our case law is clear that "the odor of marijuana is sufficiently distinctive that it alone can supply probable cause to believe that marijuana is nearby." *Commonwealth* v. *Garden*, *supra* at 48, and cases cited. The advent of decriminalization certainly has had no effect on the distinctiveness of marijuana's odor.[1] Nor has

---

[1] Whether the odor is of burnt or fresh marijuana is not meaningful. While

decriminalization affected the criminal status of numerous other activities involving marijuana. See G. L. c. 94C, § 32L. Accordingly, the odor of marijuana permits an officer reasonably to suspect that the parties involved are in possession of criminal quantities of marijuana, see G. L. c. 94C, § 34, or are in possession of marijuana with intent to distribute. See G. L. c. 94C, § 32C. In other circumstances, when the suspect party is the individual in the driver's seat, the odor of burnt marijuana also permits a reasonable suspicion that the individual is operating a motor vehicle while under the influence of marijuana in violation of G. L. c. 90, § 24 (1) (a) (1).[2]

In this case, the officers' detection of the odor of marijuana provided a basis for a reasonable suspicion that the individuals in the vehicle might be involved in the commission of a crime. Because that suspicion was reasonable, the officers did not violate the defendant's rights by inquiring further and by requiring him to exit the vehicle. Accordingly, I dissent.

---

an odor of burnt marijuana may indicate an offense committed at a somewhat earlier time, reasonable suspicion that a crime has been, or is being, committed is present.

[2]I do not agree with the court's suggestion that whether the vehicle's engine is running is relevant. The fact that an individual is sitting in the driver's seat of a vehicle is sufficient to permit a reasonable suspicion (not probable cause) that he is operating or will be operating the vehicle.