NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-980

COMMONWEALTH

vs.

RUSHON HEMINGWAY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from an order of a Superior Court judge suppressing evidence of a firearm that the defendant allegedly discarded while running from the police through the Bromley-Heath housing development (BHHD) in Jamaica Plain. After a hearing on the defendant's motion, the judge ruled that the defendant was seized when a single officer began to run after him, and, if not at that point, then when a group of approximately ten other officers joined the pursuit.  The judge suppressed the evidence of the firearm after concluding that the Commonwealth failed to demonstrate reasonable suspicion at the time of the seizure.

Although we place the moment of the seizure at the later of the two points highlighted by the judge -- that is, when the defendant realized he was being followed by nine or ten police officers as he ran -- on the facts as the judge found them, we agree that the police lacked reasonable suspicion to justify that seizure. Accordingly, we affirm the order suppressing the evidence of the gun.

1. Background. We recite the relevant facts as the judge found them, supplemented by uncontroverted facts from the record that the judge appeared to credit and that "do not detract from the judge's ultimate findings" (citation omitted). Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015). We reserve certain facts for later discussion. In addition, we review de novo the surveillance video recordings (videos) and other documentary exhibits introduced in evidence at the hearing. Commonwealth v. Tremblay, 480 Mass. 645, 656 (2018).

At approximately 10 P.M. on May 21, 2020, four Boston police officers in an unmarked car driven by Officer Christopher Smerz responded to two ShotSpotter[1] activations near the BHHD. Arriving at the BHHD about one minute later, the officers saw a

---

[1] "ShotSpotter" is "a system that identifies firearm discharges by sound and directs officers to the general location of the shots." Commonwealth v. Evelyn, 485 Mass. 691, 694 (2020).

2

man, later identified as Clifford Jones, quickly walking away from the area. Three of the officers got out of the car and intercepted Jones, who was in possession of three guns. This information was relayed to Smerz.

Meanwhile, Smerz got out of his vehicle and walked into a nearby BHHD parking lot at the center of the complex, where he found a man suffering from a gunshot wound. There were twenty to forty people in the parking lot when Smerz arrived, but neither the victim nor anyone else provided the police with any identifying information about the shooter.

Shortly after encountering the gunshot victim, Smerz focused his attention on the defendant, who was among other people walking away from the area. The defendant, whom Smerz did not know, had his back to Smerz, and Smerz could not see the defendant's hands or the front of the defendant's body. As Smerz watched, however, he saw the defendant "move[] his right shoulder up while dipping his left shoulder/arm to the front of his body. He then raised his left shoulder up and brought his right shoulder back to its normal position." Based on these movements, Smerz testified that he believed that the defendant had a weapon in his waistband.

Smerz began to follow the defendant as he walked away. When the defendant turned left around a corner of the BHHD

3

building at 275-279 Centre Street, Smerz lost sight of him. Smerz accelerated and, after rounding the corner of the same building, saw the defendant walking ahead of him toward Centre Street. At that point, the defendant looked back toward Smerz and began to run.[2] Smerz testified that when the defendant started to run, he brought both arms toward his waist "as if holding something." Again, Smerz testified that he believed the defendant had a gun, so he began to run after the defendant.

The defendant, followed by Smerz, ran roughly the length of the 275-279 Centre Street building before reaching Centre Street itself, where he turned left. The defendant, with Smerz several yards behind him, ran along Centre Street before turning left again and up a concrete walkway that followed the zigzagging contours of the eastern side of the same building.[3]

As the defendant made his second left turn from Centre Street onto the walkway, he extended his right arm; although there was no direct evidence on this point, the judge assumed without deciding that in doing so, the defendant discarded a gun. The judge found that at the time, "[the defendant was]

---

[2] The judge found that Smerz, although not in uniform, was recognizable as a police officer.

[3] Surveillance videos provide a visual record of the defendant's movement and path from his first left turn onto Centre Street until he ran into and through the building at 277 Centre Street.

4

being pursued by at least nine members of the police." As we discuss below, we infer the judge's finding that the defendant was aware of the additional officers in pursuit.

As the defendant ran, several additional officers with flashlights approached him from the opposite direction. The defendant veered left and ran into an open door at 277 Centre Street, trailed by at least ten police officers. When the defendant emerged on the other side of the building, he was placed under arrest. Officers later searched the area through which the defendant had just run and found a gun at the side of the walkway near 279 Centre Street.

2. Discussion. a. Standard of review. "On appeal, we review a ruling on a motion to suppress by accepting 'the judge's subsidiary findings of fact absent clear error,'" Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 801 (2024), quoting Commonwealth v. Polanco, 92 Mass. App. Ct. 764, 769 (2018), and "we show substantial deference to the judge's legal conclusions . . . but independently review the application of constitutional principles to the facts." Commonwealth v. Cruz, 459 Mass. 459, 464 (2011), quoting Commonwealth v. Torres, 433 Mass. 669, 671-672 (2001). In doing so, we defer to the judge's determinations of the weight and credibility of witness testimony. Commonwealth v. Scott, 440 Mass. 642, 647 (2004).

b.  Seizure.  To determine whether a person has been "seized" in a constitutional sense, we ask "whether, in the circumstances, a reasonable person would believe that an officer would compel him or her to stay."  Commonwealth v. Matta, 483 Mass. 357, 363 (2019).  The question is fact specific and recognizes that "even though most people would reasonably feel that they were not 'free to leave' in any police encounter, . . . coercion must be objectively communicated through the officer's words and actions for there to be a seizure."  Id. at 363-364.

"Whether a police 'pursuit' will be considered a seizure depends on the particular nature of the law enforcement action."  Commonwealth v. Sykes, 449 Mass. 308, 312 (2007).  "Pursuit by the police becomes a seizure when it 'would communicate[] to the reasonable person an attempt to capture or otherwise intrude on [an individual's] freedom of movement."  Commonwealth v. Isaiah I., 450 Mass. 818, 822 (2008), overruled on other grounds by Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020), quoting Commonwealth v. Watson, 430 Mass. 725, 731 (2000).  "However, when the police merely engage in '[f]ollowing or observing someone without more, such as using a siren or lights, attempting to block or control an individual's path, direction,

or speed, or commanding the individual to halt, [that] is not pursuit.'"  Isaiah I., supra, quoting Watson, supra.

The judge in the present case determined that the defendant was seized "[when] Smerz began to run southbound in pursuit of an already running [defendant]," and even if not, that "any doubt that a stop occurred [was] completely dispelled by the presence of approximately ten officers giving chase by the time [the defendant] reache[d] Centre Street."[4]  We are not persuaded by the judge's initial conclusion that the defendant was seized when Smerz began to run after him.  Because there was no evidence that Smerz "made [any] show of authority, or attempt[ed] to stop or restrain the defendant's movement, when he ran after him," Commonwealth v. Perry, 62 Mass. App. Ct. 500, 502 (2004), we do not agree that Smerz's "pursuit of an already running [defendant]" constituted a seizure.  The judge did not find, nor is there any evidence to support a finding, that the police used lights or sirens to signal the defendant to stop, or made any efforts to block or control the defendant's "path, direction, or speed" as he ran.[5]  Commonwealth v. Grandison, 433

_____

[4] In either case, and as we discuss below, the judge found that the seizure occurred before the defendant discarded the firearm he is alleged to have possessed.

[5] Although it is evident from the videos that police lights were visible in different locations near the area in which the defendant and the police eventually ran, until the final moments

7

Mass. 135, 138 (2001), quoting Watson, 430 Mass. at 731. See Commonwealth v. Franklin, 456 Mass. 818, 822 (2010). Critically, Smerz never issued any verbal command to the defendant to stop; indeed, there was no evidence that Smerz said anything to the defendant as they ran.[6]

Yet, we are persuaded that where the judge found that "approximately ten officers [were] giving chase" as the defendant began running on the eastern side of 275-279 Centre Street, and where we can infer a finding that the defendant was aware of the number of officers then in pursuit,[7] the judge did

_____

of the defendant's flight, those lights were not being controlled by the officers running behind the defendant, and the judge made no finding that emergency lights or sirens were directed at the defendant. Compare Commonwealth v. Smigliano, 427 Mass. 490, 491-492 (1998).

[6] Smerz testified that he did not verbally request the defendant to stop. The judge noted his skepticism about this statement by finding that it was "unlikely" to be true. However, the judge did not make an explicit finding on this point, and because the videos have no audio component that might resolve the issue, there remains no affirmative evidence of any verbal instruction or command.

[7] At the hearing, the judge acknowledged the significance of the defendant's awareness that other officers had joined in Smerz's pursuit and concluded, "you get seven officers chasing one guy. . . . I'm going to guess the guy being chased has figured out at that point that he's being chased by the officers." From this comment, we infer that the judge found that the defendant was aware that additional officers had joined Smerz in following him as he ran along 275-279 Centre Street. Our review of the video evidence certainly does not require such a finding, given the lack of an audio component to the recordings and the videos' documentation of the limited

8

not err in concluding that the defendant had been seized at that point.  We are satisfied that, viewing the evidence as the judge did, "a reasonable person [in the defendant's position] would believe that [the pursuing officers] would compel him . . . to stay."  Matta, 483 Mass. at 363.

c.  Reasonable suspicion.  We agree with the judge that the police did not have reasonable suspicion at the moment the defendant was seized.  Reasonable suspicion exists "where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime."  Grandison, 433 Mass. at 139, quoting Commonwealth v. Silva, 366 Mass. 402, 405 (1974).  "Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience." Grandison, supra.  "The test is an objective one."  Id., quoting Commonwealth v. Helme, 399 Mass. 298, 301 (1987).

The Commonwealth points to several factors in support of a finding of reasonable suspicion in this case.  These include: (1) the two ShotSpotter activations in the area of the BHHD that triggered the initial police response to the area of the shooting; (2) the officers' discovery of three guns in Clifford

---

sightlines along the walkway resulting from the layout of the path around protruding corners of the 275-279 Centre Street building.  It does, however, permit that finding.

9

Jones's possession; (3) the officers' discovery of a gunshot victim in a BHHD parking area; (4) the defendant's presence in the same parking lot as the gunshot victim; and (5) Smerz's opinion that the defendant's shoulder and arm movements as he walked away from the area suggested that he was hiding a weapon.[8]

While the first four of these factors provide evidence that a crime was committed at the BHHD, see Commonwealth v. Ford, 100 Mass. App. Ct. 712, 717 (2022), and place the defendant near the scene of that crime, see Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 14-15 (2023), nothing in that evidence differentiates the defendant from the "twenty to forty [other] people" who were in the same parking lot when Smerz first noticed the defendant.[9] Contrast Ford, supra at 714 (defendant only person officer saw in area); Commonwealth v. Privette, 100 Mass. App. Ct. 222, 229 (2021), S.C. 491 Mass. 501 (2023) (same).

---

[8] Although the judge considered the additional factors of the defendant's flight from the police and Smerz's prior gun arrests in the area of the BHHD in his reasonable suspicion analysis, he ultimately gave those factors "limited weight," and the Commonwealth does not argue those points on appeal. We would, in any case, defer to the judge's assessment of the weight of that evidence. See Commonwealth v. Warren, 475 Mass. 530, 534 (2016).

[9] In fact, to the extent that the discovery of the three guns in the possession of another person (Jones) with no apparent connection to the defendant added anything to the reasonable suspicion analysis, the evidence would seem to mitigate in the defendant's favor.

10

As the Commonwealth notes, in the circumstances of this case, Smerz's opinion that the defendant's shoulder and arm movements before he began to run indicated that he was attempting to secure a weapon in or around his waistband were "critical[]" to the reasonable suspicion analysis. The judge, however, gave "little to no weight to any alleged furtive movements," because he determined that Smerz's training "le[ft] much to be desired," and Smerz failed to explain how either his training or his experience informed his interpretation of the defendant's shoulder movements. Discounting this testimony, the judge concluded that "Smerz's unsupported interpretation of [the defendant]'s movements [was not] objectively reasonable." Cf. Cruz, 459 Mass. at 462 n.7 ("The subjective intentions of police are irrelevant so long as their actions were objectively reasonable"). Deferring, as we must, to the judge's assessment of the evidence, Commonwealth v. Warren, 475 Mass. 530, 534 (2016), we cannot say that he erred. Cf. Commonwealth v. Karen K., 491 Mass. 165, 176-177 (2023) (officer's testimony, based on training and experience, that juvenile's adjustment of waistband and turning body away from police was consistent with carrying illegal firearm, relevant to reasonable suspicion analysis); Commonwealth v. Evelyn, 485 Mass. 691, 708 (2020) (evidence of defendant's hand gestures relevant to reasonable suspicion where

officers testified based on training and experience that gestures were consistent with concealment of weapon); Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007) (concluding that, although a "close [question]," police had reasonable suspicion that defendant carried illegal firearm based in part on officers' opinion, "based on [their] training," that defendant was carrying concealed weapon).

Our determination that the seizure occurred when the defendant became aware that approximately ten police officers were chasing him allows the Commonwealth to argue the significance of Smerz's observations of the defendant's bringing both arms toward his waist as he began to run, "as if holding something." However, the judge discredited this opinion as "no more than a guess."[10] We are bound to consider that evidence as the judge weighed and credited it. Warren, 475 Mass. at 534. Lastly, to the extent that the defendant's continued flight is relevant to the reasonable suspicion analysis, it is insufficient, without more, to support a determination of reasonable suspicion here, particularly where the judge gave it only limited weight. See id. at 534-535, 540.

---

[10] In coming to this conclusion, the judge noted that Smerz could not see the front of the defendant's body.

12

After conducting an independent review of the above factors and leaving all determinations of the weight and credibility of the testimony to the trial judge, Scott, 440 Mass. at 647, we conclude that the officers did not have reasonable suspicion to seize the defendant when the defendant became aware that approximately ten officers were chasing him.

Conclusion.  Because we agree with the judge that the Commonwealth failed to prove that the officers had the reasonable suspicion required to seize the defendant in the circumstances of this case, and because we conclude that the defendant did not discard the firearm he is alleged to have illegally possessed until after the seizure occurred, we affirm the order allowing the defendant's motion to suppress the evidence of the weapon.  See Commonwealth v. O'Laughlin, 25 Mass. App. Ct. 998, 999 (1988) (officers' suspicion must be reasonable before pursuit begins).

So ordered.

By the Court (Singh, Hand & D'Angelo, JJ.[11]),

Clerk

Entered:  October 4, 2024.

_____

[11] The panelists are listed in order of seniority.