COMMONWEALTH *vs.* ANDRE LEE DAMON
(and two companion cases[1]).

No. 11-P-60.

Plymouth. March 7, 2012. - July 16, 2012.

Present: COHEN, GREEN, & GRAHAM, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Motor vehicle, Threshold police inquiry, Probable cause. *Threshold Police Inquiry. Probable Cause. Practice, Criminal,* Motion to suppress.

A Superior Court judge erred in denying two criminal defendants' pretrial motions to suppress evidence obtained during a stop of one defendant's motor vehicle, where, although the stop of the vehicle was justified based on reasonable suspicion that a traffic violation had occurred after that defendant failed to use his directional signal when making turns [168], the orders to the defendants to step out of the vehicle, and the subsequent search of the vehicle, were not proper, in that the odor of burnt marijuana by itself did not provide the troopers involved with probable cause for a warrantless search of the vehicle, and the record supported the judge's findings and conclusion that the exit orders were not justified by legitimate concerns for the troopers' safety or the safety of others [169-170].

INDICTMENTS found and returned in the Superior Court Department on March 20, 2009.

Pretrial motions to suppress evidence were heard by *Thomas A. Connors*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Alison T. Bloomquist-Jordan*, Committee for Public Counsel Services, for Andre Lee Damon.

*Joseph F. Krowski* for Nicholas Loring.

---

[1] One against Damon and one against Nicholas Loring.

*Laurie Yeshulas*, Assistant District Attorney, for the Commonwealth.

GRAHAM, J. The defendants, Andre Lee Damon and Nicholas Loring, were indicted in the Superior Court for trafficking in heroin in an amount of twenty-eight grams or more, but less than one hundred grams, in violation of G. L. c. 94C, § 32E(*c*). Damon was also indicted for breaking and entering in the nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 16. State police stopped a motor vehicle owned and operated by Damon for a civil infraction. After detecting the odor of burnt marijuana, the police ordered the defendants out of the vehicle, conducted a search of a closed compartment in the motor vehicle, and recovered the heroin.

Prior to trial, the defendants each filed a motion to suppress the heroin and any statements made to the police. In denying the motions to suppress, the judge concluded that the exit orders were justified by the fact that the driver could not produce a license and appeared nervous, the officers detected the odor of burnt marijuana, and the driver acknowledged he had smoked marijuana in the car "at some point." The judge concluded that the search of the vehicle was permissible under the so-called "automobile exception" because the officers had probable cause to believe that contraband (i.e., marijuana) was present in the vehicle. The defendants' interlocutory appeal was allowed by a single justice of the Supreme Judicial Court, and the matter was transferred to this court for review.

The defendants contend that the stop of Damon's vehicle for an alleged civil infraction (failure to use a directional signal prior to turning) was improper. In addition, they argue that, after the passage of G. L. c. 94C, § 32L (the amended Act),[2]

---

[2]General Laws c. 94C, § 32L, inserted by St. 2008, c. 387, § 2, provides, in pertinent part:

> "Notwithstanding any general or special law to the contrary, possession of one ounce or less of marihuana shall only be a civil offense, subjecting an offender who is eighteen years of age or older to a civil penalty of one hundred dollars and forfeiture of the marihuana, but not to any other form of criminal or civil punishment or disqualification.
>
> ". . .
>
> "By way of illustration rather than limitation, possession of one ounce

which decriminalized possession of one ounce or less of marijuana, the exit orders and subsequent search of the vehicle, based solely on the odor of burnt marijuana, were improper. We conclude that the stop of the vehicle was justified, but agree that the exit orders and search of the vehicle were improper. Accordingly, we reverse the order denying the motions to suppress.

*Facts.* We summarize the detailed and comprehensive facts as found by the judge, with minor supplementation by uncontroverted facts from the record of the hearing, noting that all of the judge's findings are supported by the evidence that he found credible. Consequently, we accept those findings. *Commonwealth* v. *Sparks*, 433 Mass. 654, 656 (2001). We accord deference to the judge's factual findings, "but independently review[] the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995).

On January 16, 2009, Brockton police had a warrant for the arrest of Manuel Barbosa for murder. The police believed Barbosa might be found at 85 Wyman Street in Brockton, and a contingent of Brockton and State police went to that address to conduct surveillance. Sergeant Lopes, one of the officers at the scene, radioed Troopers Steven Connolly and Richard Long to assist in the surveillance. Connolly arrived and parked his unmarked vehicle on Walnut Street around the corner from the Wyman Street address. Long, driving a marked cruiser, arrived and parked at a location a few streets from the Wyman Street address.

At approximately 7:45 P.M., Lopes radioed Connolly and informed him that two men had just left 85 Wyman Street and entered a red Nissan automobile. Lopes instructed Connolly to follow the vehicle and stop it. Shortly thereafter, Connolly observed the red Nissan and followed it onto North Main Street. The operator of the Nissan made two turns in light traffic without using a directional signal. Connolly signaled for the Nissan to

---

or less of marihuana shall not provide a basis to deny an offender student financial aid, public housing or any form of public financial assistance including unemployment benefits, to deny the right to operate a motor vehicle or to disqualify an offender from serving as a foster parent or adoptive parent."

stop, then parked his vehicle directly behind it. Shortly there-after, Long arrived at the scene to assist Connolly.

Trooper Connolly approached the driver's side of the Nissan, where Damon was seated in the driver's seat, and Long approached Loring, who sat in the front passenger seat. Neither officer had his weapon drawn. Connolly asked Damon for his license and Damon responded that he did not have his license with him.[3] Both defendants appeared to be "nervous" and Damon avoided eye contact with Connolly. Trooper Long noted that Loring was not wearing a seatbelt and asked him for his license, which Loring produced. As this was occurring, Long smelled the odor of burnt marijuana emanating from inside the vehicle. He leaned his head inside the window and asked Damon if he had smoked marijuana in the car. Damon responded, "Not for a while," whereupon Connolly ordered Damon out of the car.[4] At that point, the troopers had not seen any contraband or weapons in the car or in the possession of either defendant, nor had they observed either defendant make any furtive gestures or threatening movements. Trooper Connolly testified that his reasons for the exit order were Damon's nervousness; Connolly's wish to secure identification information; and the burnt marijuana odor that Long detected. Connolly also testified that part of the reason for the exit order was a concern for officer safety based on his fear that one of the occupants could be Barbosa, the murder suspect. The motion judge, however, discredited the latter reason, determining that officers at the surveillance scene knew that Barbosa was black, and had seen the defendants, who were white, leave 85 Wyman Street and walk to the Nissan.

Trooper Long ordered Loring to step out of the car. Both defendants complied with the exit orders and were then pat frisked for weapons (no weapons were found). Following the patfrisks, Long opened the front door of the Nissan and searched the vehicle's interior, beginning with the area under the front

---

[3] Connolly did not run a computer check on Damon's license until after the vehicle was searched; when the trooper did so, he found that Damon's license was valid.

[4] There is no indication that the troopers suspected Damon of driving while under the influence of marijuana, in violation of G. L. c. 90, § 24(1)(*a*)(1), or that they requested that he submit to field sobriety tests. Compare *Commonwealth* v. *Cruz*, 459 Mass. 459, 469 n.17 (2011).

passenger seat. He then continued his search by unlatching and opening the closed center console, which he found to contain a tray. He lifted the tray and then saw a brick of brown substance, which measured about six by three inches, inside shrink-wrap.

Believing the brown substance to be heroin, Long removed it and walked back to Connolly and the defendants at the rear of the vehicle. He held it out for Connolly to see, remarking, "What do you think this is?" The defendants bolted, running in opposite directions. Long pursued Loring and apprehended him after a short foot chase. Damon successfully fled the scene but was apprehended later that evening.

*Discussion.* 1. *Initiation of the stop.* The defendants contend that Damon's failure to use his directional signal when making turns did not constitute a civil traffic violation[5] because that failure did not affect other vehicles on the road. General Laws c. 90, § 14B, inserted by St. 1951, c. 649, provides, in pertinent part, that "[e]very person operating a motor vehicle, before stopping said vehicle or making any turning movement *which would affect the operation of any other vehicle*, shall give a plainly visible signal by activating the brake lights or directional lights or signal as provided on said vehicle" (emphasis added). The defendants contend that the evidence fails to establish that another vehicle was actually affected.

Trooper Connolly testified that on the evening in question, at approximately 7:45 P.M., he followed Damon's vehicle as it traveled on Walnut Street and took a right onto Prospect Street and a left onto North Main Street. He noted that the operator of the vehicle (Damon) failed to use his turn signal at each of these turns.[6] Although Connolly observed that the traffic was light at that time, we conclude that on the facts found by the judge, the trooper "had reasonable suspicion that a traffic violation had occurred and, therefore, the right to stop the vehicle." *Commonwealth* v. *Avellar*, 70 Mass. App. Ct. 608, 613 (2007).[7]

---

[5]"Where the police have observed a traffic violation, they are warranted in stopping a vehicle." *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995), quoting from *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980).

[6]On cross-examination, Connolly testified that Damon made three turns without using his turn signals.

[7]That the stop for the traffic offense was a pretext, as Loring strongly emphasizes in his brief, does not matter. See *Commonwealth* v. *Ciaramitaro*,

2. *The exit orders.* At the time the judge decided the motion to suppress, he did not have the benefit of the decision in *Commonwealth* v. *Cruz*, 459 Mass. 459 (2011) (*Cruz*). Prior to *Cruz*, the odor of burnt marijuana emanating from a vehicle provided police with probable cause for a warrantless search of that vehicle. See *Commonwealth* v. *Garden*, 451 Mass. 43, 47-48 (2008). However, in *Cruz*, the court determined that, consistent with the amended Act, which decriminalizes the possession of small amounts of marijuana, "without at least some other additional fact to bolster a reasonable suspicion of actual *criminal* activity, the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity to justify an exit order." *Cruz, supra* at 472.[8] Here, as there were no additional facts to bolster reasonable suspicion of criminal activity, the exit orders and subsequent search of the vehicle were improper.[9] Contrast *Commonwealth* v. *Daniel*, 81 Mass. App. Ct. 306, 312-313, further appellate review granted, 462 Mass. 1101 (2012) (probable cause for exit order and search of vehicle established where police observed operator of motor vehicle driving negligently; detected noticeable odor of freshly burnt marijuana in vehicle after stop; and observed passenger make movements in vicinity of glove box upon approach of officer).

The Commonwealth argues that the motion judge's findings were erroneous insofar as they rejected Trooper Connolly's testimony that the exit orders were issued because the troopers possessed a reasonable fear for their safety. Ordinarily, "[w]hen the police are justified in stopping an automobile for a routine

51 Mass. App. Ct. 638, 643 (2001) (officers' motive for stopping vehicle is irrelevant, and all that need be shown is that they observed driver commit traffic violation).

[8]We note, however, the observation of the Supreme Judicial Court that "possession of marijuana, in any amount, remains illegal; decriminalization is not synonymous with legalization. See G. L. c. 94C, § 31; G. L. c. 94C, § 34. Because marijuana remains unlawful to possess, any amount of marijuana is considered contraband." *Cruz, supra* at 473. (At the same time, the court has placed limitations on the application of the "contraband" definition in the context of warrantless searches concerning one ounce or less of marijuana. See note 9, *infra.*)

[9]As noted above, the motion judge separately found the search of the vehicle proper under the "automobile exception" because the officers had probable cause to believe that contraband (i.e., any amount of marijuana) was present in the vehicle. This view was explicitly rejected in *Cruz, supra* at 474-476.

traffic violation, they may, for their safety and the safety of the public, order the driver or the passengers to leave the automobile, but only if they have a reasonable belief that their safety, or the safety of others, is in danger." *Commonwealth* v. *Torres*, 433 Mass. 669, 673 (2001). "To determine whether such a belief is reasonable, [the reviewing court asks] 'whether a reasonably prudent man in the policeman's position would be warranted' in such a belief." *Ibid.*, quoting from *Commonwealth* v. *Vazquez*, 426 Mass. 99, 103 (1997). "A 'mere hunch' is not enough, . . . nor is nervousness or fidgeting on the part of the driver or passengers in a stopped vehicle [by itself] an adequate reason to order them out of the car." *Ibid.*, citing *Commonwealth* v. *Torres*, 424 Mass. 153, 158-159 (1997). "Yet it 'does not take much for a police officer to establish a reasonable basis to justify an exit order or a search based on safety concerns.' " *Ibid.*, quoting from *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 664 (1999), *S.C.*, 432 Mass. 613 (2000).

Here, the record clearly supports the motion judge's findings and conclusion that the exit orders were not justified by legitimate concerns for the troopers' safety or the safety of others. The record does not support the Commonwealth's argument that the officers were concerned that Barbosa, the subject of an arrest warrant, could have been one of the passengers. The judge's findings, supported in the record, were that surveillance officers observed two white males leave 85 Wyman Street and get into a red Nissan; therefore, it was implausible for the officers to believe that either defendant could be Barbosa,[10] a dark-skinned male of Cape Verdean descent. The findings were not clearly erroneous. See *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980) (assessment of witness credibility is province of motion judge); *Commonwealth* v. *Colon*, 449 Mass. 207, 215, cert. denied, 552 U.S. 1079 (2007) (reviewing court will not set aside credibility determinations absent clear error). See also *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990) (if testimony supports more than one permissible view of evidence, motion judge's choice of finding cannot be said to be clearly erroneous).

---

[10]At the hearing on the motion to suppress, a photograph of Barbosa was admitted in evidence.

*Conclusion.* The exit orders issued to the defendants and the subsequent search of the vehicle were improper. Accordingly, the order denying the motions to suppress evidence is reversed. See *Commonwealth* v. *Loughlin*, 385 Mass. 60, 63 (1982) (evidence obtained as result of unconstitutional police conduct must be excluded from use at trial under "fruit of the poisonous tree" doctrine).

*So ordered.*