NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13756

COMMONWEALTH  vs.  DARYEN T. ROBINSON.


Bristol.     October 8, 2025. - February 13, 2026.

Present (Sitting at Fall River):  Budd, C.J., Gaziano, Kafker,
Wendlandt, Georges, Dewar, & Wolohojian, JJ.


Controlled Substances.  Firearms.  Search and Seizure, Motor
    vehicle, Reasonable suspicion, Consent, Fruits of illegal
    search.  Constitutional Law, Search and seizure, Reasonable
    suspicion, Harmless error.  Practice, Criminal, Harmless
    error, Motion to suppress.



Complaints received and sworn to in the Taunton Division of
the District Court Department on September 3, 2021, and February
9, 2024.

A pretrial motion to suppress evidence was heard by Michael
D. Brennan, J., and the cases were tried before Gloriann
Moroney, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Patrick Levin, Committee for Public Counsel Services, for
the defendant.
Rachel J. Eisenhaure, Assistant District Attorney, for the
Commonwealth.
Stan Chiueh, Dania Bardavid, & Jason B. Koffler, of New
York, & Radha Natarajan, for New England Innocence Project
& another, amici curiae, submitted a brief.

Katharine Naples-Mitchell & Alexandra Arnold, for Massachusetts Association of Criminal Defense Lawyers & another, amici curiae, submitted a brief.

GEORGES, J.  During a routine traffic stop, State police troopers ordered the defendant out of his vehicle, pat frisked him, and sought consent to search the car.  The defendant told a trooper he could "take a look around" the area of the front passenger's seat.  During the ensuing search, the trooper discovered cocaine and fentanyl in the center console and a firearm and magazine in the glove compartment.  As a result, the defendant was charged with multiple firearm and drug offenses.  After his motion to suppress evidence was denied in part, he was convicted of several of the charges.

The defendant argues, among other claims, that the motion to suppress should have been allowed because the exit order was unlawful and any purported consent to the search of the vehicle was invalid.  We agree.  We further conclude that the erroneous admission of the tainted evidence at trial was not harmless beyond a reasonable doubt.  In addition, the evidence at trial was insufficient to support the defendant's conviction of possession of ammunition without a firearm identification (FID) card.  Retrial on that charge is therefore barred, and a judgment of not guilty shall enter.  We vacate the remaining

convictions and remand for further proceedings consistent with this opinion.[1]

Background. 1. Facts. We recite the facts as found by the motion judge following an evidentiary hearing on the defendant's motion to suppress, supplemented by undisputed testimony not inconsistent with those findings, see Commonwealth v. Gonzalez, 487 Mass. 661, 662 (2021), and by our independent review of body-worn camera video footage admitted in evidence, see Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021).

Shortly after midnight on September 3, 2021, State police Trooper Ali Jaafar observed a vehicle traveling in Taunton with heavily tinted windows. The defendant was driving, with Marcus DeMedeiros seated in the front passenger's seat. As Jaafar followed the vehicle in his cruiser, he observed the vehicle make what he described as "unnecessary turns" that he believed were meant to be evasive. Jaafar initiated a traffic stop based on the window tint.[2]

---

[1] We acknowledge the amicus briefs submitted in support of the defendant by the New England Innocence Project and the Fred T. Korematsu Center for Law and Equality; and the Massachusetts Association of Criminal Defense Lawyers and the Criminal Justice Institute at Harvard Law School.

[2] Under G. L. c. 90, § 9D, operating a motor vehicle with excessively tinted windows is a civil infraction. See Commonwealth v. Baez, 47 Mass. App. Ct. 115, 117-118 (1999).

When Jaafar approached the vehicle, he detected a strong odor of unburnt marijuana and asked how much marijuana was inside.  The defendant replied, "We just parked the car and smoked."  Jaafar requested identification from both occupants to confirm they were of legal age to possess marijuana.  The defendant produced his license.  DeMedeiros stated that he had no identification, but that his name was "Marcus Medeiros" and he was twenty-seven years old.

Jaafar noticed that both occupants had matching hand tattoos, which he associated with possible gang affiliation.  He also observed that DeMedeiros had two cell phones on his lap, one of which appeared to be a "burner" phone.[3]  Jaafar attempted several times, unsuccessfully, to confirm DeMedeiros's identity using his cruiser's mobile data terminal, repeatedly seeking clarification as to the spelling of DeMedeiros's name.  After his third attempt, Jaafar returned to the vehicle and ordered DeMedeiros out.

---

[3] A burner phone is "a prepaid cell phone that is . . . usually intended to be disposed of after use."  Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/burner%20phone [https://perma.cc/PZH6-YQ6T].  Jaafar explained, based on his training and experience, that "somebody involved in the distribution of narcotics will have multiple cell phones" and that "one [cell phone] can be used for . . . business purposes," while another can be used separately for personal purposes.  Jaafar further explained that where such individuals believe a telephone number "has been 'burned' or identified by law enforcement," they can simply purchase "another pay-as-you-go phone."

Jaafar proceeded to pat frisk DeMedeiros and place him in handcuffs, at which time State police Trooper Nathan Hayes arrived. Jaafar detained and placed DeMedeiros in the rear of his cruiser. After finally confirming DeMedeiros's identity, Jaafar learned that he was subject to an outstanding default warrant for a 2014 shoplifting offense. Jaafar then returned to the vehicle and ordered the defendant to get out. By that time, a third State police trooper had arrived and positioned himself near the defendant's vehicle, while Hayes was standing by the driver's door. Jaafar testified that he issued the exit order so he could discuss searching the car with the defendant. Once the defendant got out, Hayes pat frisked him.

Jaafar informed the defendant of DeMedeiros's outstanding warrant and explained that the defendant could post bail for DeMedeiros if he wished. Jaafar then asked the defendant about the two cell phones he had observed on DeMedeiros's lap. As the motion judge found, Jaafar suspected that DeMedeiros was engaged in drug distribution. Jaafar next asked the defendant, "Do you mind if I take a quick look around [DeMedeiros's] area and maybe the back seat?" He added that if there was "nothing in there," the defendant would be "out of here with a warning." The defendant responded, "You can take a look around his area of the car all day." Based on our review of Jaafar's body-worn camera

video footage, the defendant consented to the search less than two minutes after Jaafar issued the exit order to the defendant.

Jaafar searched the front passenger's area and then the center console, where he discovered "a large baggie containing what Jaafar believed to be cocaine and pills, which he believed was fentanyl." The defendant then was handcuffed and advised of his Miranda rights. Jaafar continued the search. Using the car keys, he opened a locked glove compartment, where he found a "ghost gun"[4] and a loaded extended magazine. Both occupants denied ownership or knowledge of the gun, and the defendant denied ownership of the drugs.

2. Procedural history. On September 3, 2021, a criminal complaint issued from the Taunton Division of the District Court Department charging the defendant with multiple firearm and drug-related offenses, including possession of a firearm without a license, G. L. c. 269, § 10 (a); possession of ammunition without an FID card, G. L. c. 269, § 10 (h) (1); and possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (a).[5]

---

[4] A ghost gun is "a gun that lacks a serial number by which it can be identified and that is typically assembled by the user (as from purchased or homemade components)." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/ghost%20gun [https://perma.cc/H24H-M8R8].

[5] The Commonwealth subsequently nol prossed several other charges: unlawful possession of a large capacity firearm while in commission of a felony, G. L. c. 265, § 18B; unlawful

In August 2022, the defendant moved to suppress the evidence seized during the traffic stop, arguing, among other grounds, that the exit order was unlawful and that he did not validly consent to a search of the vehicle.  Following an evidentiary hearing, a District Court judge (motion judge) denied the defendant's motion pertaining to the seized cocaine, fentanyl, gun, and ammunition.  The motion judge made three relevant dispositive findings.  First, the traffic stop and the troopers' initial interactions were lawful.  Second, the defendant voluntarily consented to the search of the center console.  Third, the firearm and magazine were lawfully seized from the glove compartment under the automobile exception, as probable cause supported a reasonable belief that the compartment contained more narcotics.  The motion judge did not expressly address the legality of the exit order.

Subsequently, a second complaint issued, charging the defendant with possession of fentanyl with intent to distribute, G. L. c. 94C, § 32 (a), which was joined with his pending charges.  A jury trial commenced in March 2024.  At the close of the Commonwealth's case and again at the close of all the

---

possession of a firearm without an FID card, G. L. c. 269, § 10 (h); unlawful possession of a large capacity firearm, G. L. c. 269, § 10 (m); and possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (c).  A charge of conspiracy to distribute a class B substance, G. L. c. 94C, § 40, was similarly dismissed at the Commonwealth's request.

evidence, the defendant moved for directed verdicts of not guilty, which the trial judge denied. The defendant was convicted of possession of a firearm without a license, possession of ammunition without an FID card, and possession of cocaine and fentanyl with intent to distribute. The defendant appealed, and we granted his application for direct appellate review.

Discussion. The defendant challenges the denial of his motion to suppress, contending that the exit order was unlawful and that any consent to search the vehicle was tainted by that unlawful action.[6] He further argues that, without the evidence obtained during the unlawful search, the Commonwealth failed to present sufficient evidence to sustain his convictions.

---

[6] The defendant also contends that the traffic stop was impermissibly prolonged and that Jaafar's request for consent to search the vehicle required, and lacked, reasonable suspicion of criminal activity. We need not reach these arguments. As explained below, the motion to suppress should have been allowed on the independent ground that the Commonwealth failed to establish that the defendant's consent was sufficiently attenuated from the unlawful exit order.

Accordingly, we assume, without deciding, that the police interaction up to the point of the exit order was lawful and that the request for consent was properly made for purposes of the defendant's reasonable suspicion claim. See Commonwealth v. Ferrara, 376 Mass. 502, 505 (1978). We likewise decline to address the defendant's remaining claims of trial error, as we assume they are unlikely to recur upon remand. See Commonwealth v. Hoyt, 461 Mass. 143, 156 n.12 (2011).

We begin by addressing the legality of the exit order, and then turn to the validity of the defendant's consent to search the vehicle. Concluding that the motion to suppress should have been allowed, we address whether the erroneous admission of the evidence obtained from the vehicle was harmless beyond a reasonable doubt. Finally, we consider whether retrial is permitted on each of the charged offenses.

1. <u>Motion to suppress</u>. In reviewing a decision on a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error, except where those findings rest solely on documentary evidence, such as a video recording, which we review de novo. See <u>Yusuf</u>, 488 Mass. at 385. We likewise "conduct an independent review of [the motion judge's] ultimate findings and conclusions of law" (citation omitted). <u>Commonwealth</u> v. <u>Jones-Pannell</u>, 472 Mass. 429, 431 (2015).

a. <u>Exit order</u>. Under art. 14 of the Massachusetts Declaration of Rights, police may not issue an exit order based solely on a traffic violation. See <u>Commonwealth</u> v. <u>Barreto</u>, 483 Mass. 716, 722 (2019); <u>Commonwealth</u> v. <u>Gonsalves</u>, 429 Mass. 658, 662-663 (1999). Rather, an exit order during a routine traffic stop is permissible only if police (1) "are warranted in the belief that the safety of the officers or others is threatened"; (2) "have reasonable suspicion of criminal activity"; or (3) "are conducting a search of the vehicle on other grounds."

Barreto, supra. The Commonwealth conceded at oral argument that none of these justifications applies here. We agree; the exit order was unlawful.

Although the Commonwealth's concession largely resolves the issue, the record independently compels the same conclusion. See Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010) ("our judicial obligations compel us to examine independently the errors confessed" by parties [citation omitted]). At the time Jaafar ordered the defendant out of the vehicle, no independent grounds existed to search the car, such as under the automobile exception to the warrant requirement. See Barreto, 483 Mass. at 722; Commonwealth v. Amado, 474 Mass. 147, 152 (2016). Nor did the totality of the circumstances justify an exit order based on safety concerns or reasonable suspicion of criminal activity. See Commonwealth v. Monell, 99 Mass. App. Ct. 487, 489 (2021), quoting Gonsalves, 429 Mass. at 665 (test is based on "totality of the circumstances").

With respect to safety concerns, the record provides no objective basis for concern. Regarding the defendant's behavior, State police troopers described the defendant as "very respectful" and "very cooperative," characterizing him overall as "pretty chill" throughout the encounter. While the defendant was also described as "a little nervous," nervousness alone does not support a reasonable belief that officer safety is

threatened.  See Barreto, 483 Mass. at 723 (nervousness, without more, does not warrant belief of safety concern where "many would likely be nervous in response to being stopped" by multiple officers).  Our independent review of the body-worn camera footage reinforces this conclusion:  after DeMedeiros was removed from the vehicle -- and before the defendant was ordered out -- the defendant remained calm and engaged in relaxed, even light-hearted, conversation with another trooper for several minutes, behavior fundamentally inconsistent with any genuine safety concern.

Moreover, by the time the exit order was given to the defendant, any plausible safety rationale had dissipated. DeMedeiros had already been handcuffed and secured in the rear of a cruiser, and the troopers on scene outnumbered the defendant three to one.  Courts have repeatedly recognized that such circumstances cut against any objectively reasonable safety concern.  See Barreto, 483 Mass. at 717, 723 (where, among other circumstances, police outnumbered defendant "at least four" to one, "exit order was not justifiable on the basis that police reasonably believed the defendant posed a safety threat").  Cf. Commonwealth v. Silva, 61 Mass. App. Ct. 28, 37 n.11 (2004) ("a handcuffed suspect locked inside a patrol car poses little risk of attack").  Although "it does not take much" to justify an exit order based on safety concerns, Gonsalves, 429 Mass. at

664, the record here provides nothing that would warrant a reasonably prudent officer to believe that the safety of the police or others was in danger, id. at 661.

The record is equally insufficient to justify the exit order based on reasonable suspicion that the defendant was engaged in criminal activity. Cf. Commonwealth v. Cruz, 459 Mass. 459, 467 (2011). The odor of unburnt marijuana and the defendant's mild nervousness do not, without more, give rise to such suspicion. See Commonwealth v. Craan, 469 Mass. 24, 28 n.6 (2014) (no reasonable suspicion of criminal activity warranting exit order based on odor of unburnt marijuana alone); Cruz, supra at 468 (nervousness "is common, and not necessarily indicative of criminality, . . . during even a mundane encounter with police"); Commonwealth v. Locke, 89 Mass. App. Ct. 497, 501-502 (2016) (odor of marijuana, presence of air fresheners, and nervousness of driver and passenger were insufficient to justify exit order).[7]

---

[7] Additionally, although the defendant acknowledged that he had smoked marijuana earlier, nothing in the record suggests that Jaafar either suspected him of operating while under the influence or sought to investigate impairment. See Commonwealth v. Damon, 82 Mass. App. Ct. 164, 167 n.4 (2012). Contrast Commonwealth v. Davis, 481 Mass. 210, 215-217 (2019) (officer had probable cause to arrest defendant for operating motor vehicle while under influence of marijuana where defendant, who told officer he had smoked marijuana earlier that day, had numerous indicia of impairment). For example, there is no evidence in the record (and the motion judge made no findings)

Nor does any other factor alter the analysis.  For example, the presence of matching hand tattoos, purportedly suggestive of gang affiliation, carries little weight absent circumstances rendering such affiliation relevant to suspected criminal activity.  Cf. Commonwealth v. Sweeting-Bailey, 488 Mass. 741, 745 (2021), cert. denied, 143 S. Ct. 135 (2022) (gang affiliation alone is insufficient to justify exit order on basis of safety concerns).  Additionally, DeMedeiros's equivocation about the spelling of his name and his outstanding default warrant for a years-old shoplifting charge are likewise unavailing, particularly where the defendant was the subject of the exit order.  See Commonwealth v. Brown, 75 Mass. App. Ct. 528, 536 (2009) (basis for exit order must be "particular to the individual" whose liberty is restrained thereby [citation omitted]).  Cf. Commonwealth v. Stampley, 437 Mass. 323, 330 (2002) (holding exit order was "hallmark of reasonableness" where two passengers remained in vehicle and police issued exit order only to passenger whose actions raised concerns).

---

that the defendant exhibited indicia of impairment, such as red or glassy eyes, unusual speech or movement, or inappropriate responses to questions that would lead a reasonable observer to conclude that his ability to operate the vehicle was compromised by marijuana use.  See Commonwealth v. Daniel, 464 Mass. 746, 756-757 (2013) (in absence of indicia of impairment, officer lacked probable cause to believe driver was operating while under influence of marijuana).  Indeed, before any contraband was discovered, Jaafar indicated that he intended to let the defendant go.

In short, Jaafar's exit order was impermissible under art. 14. That conclusion, however, does not end our inquiry. The Commonwealth contends that the discovery of the drugs and firearm flowed not from the unlawful exit order, but from the defendant's subsequent consent. We therefore turn to whether that consent was sufficiently attenuated from the constitutional violation to be valid.

b. Attenuation. Under the "fruit of the poisonous tree" doctrine, the exclusionary rule bars the admission of evidence derived from an unconstitutional search or seizure. Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019). See Barreto, 483 Mass. at 724 ("Because the exit order was not lawfully issued, the evidence obtained from the subsequent search should have been suppressed as fruit of the poisonous tree"). The inquiry does not turn on a simple "but for" test. See Commonwealth v. Long, 476 Mass. 526, 536 (2017). Rather, we ask whether the evidence was obtained "by exploitation of [that] illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (citation omitted). Commonwealth v. Damiano, 444 Mass. 444, 453 (2005). The Commonwealth bears the burden of proving attenuation. Id. at 454.

The Commonwealth contends that the defendant's consent to search the vehicle broke the causal chain between the unlawful

exit order and the discovery of the evidence.  See Commonwealth v. Kipp, 57 Mass. App. Ct. 629, 634 (2003) (holding taint of prior unlawful entry had dissipated two hours later when defendant consented to subsequent search).  It is true that, in some circumstances, voluntary consent may constitute an intervening act sufficient to dissipate the taint of prior police misconduct.  See Fredericq, 482 Mass. at 80.  Consent, however, "does not automatically attenuate the taint of an illegality," particularly where the consent itself is the product of the unlawful conduct.  Id. at 80-81.  To determine whether the consent is tainted, we consider (1) the temporal proximity between the illegality and the consent; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.  Id. at 81.  We address these factors in turn.

The first factor -- temporal proximity -- strongly favors suppression.  The defendant consented to the search less than two minutes after being unlawfully ordered out of the vehicle, which, as the Commonwealth conceded at oral argument, weighs against attenuation.  See Commonwealth v. Diaz, 496 Mass. 210, 218 (2025) (lapse of less than two minutes between illegal act and defendant's response weighed against attenuation); Fredericq, 482 Mass. at 81, quoting Commonwealth v. Midi, 46 Mass. App. Ct. 591, 595 (1999) ("When consent to search is

obtained through exploitation of a prior illegality, particularly very close in time following the prior illegality, the . . . compromised consent has been thought to be tainted and inadmissible").

The second factor likewise weighs heavily against the Commonwealth. There were no intervening circumstances between the unlawful exit order and the defendant's consent. The defendant was not informed that he could refuse to consent, nor was there any break in the encounter that might have dissipated the coercive effect of the illegal seizure. Contrast Commonwealth v. Ocasio, 71 Mass. App. Ct. 304, 310, cert. denied, 555 U.S. 931 (2008) (taint of prior illegality purged where, among other things, police informed individual of right to refuse consent); Commonwealth v. Maldonado, 55 Mass. App. Ct. 450, 454 (2002), S.C., 439 Mass. 460 (2003) (taint of unlawful traffic stop was purged by intervening circumstance where defendant, after being told he was free to leave, returned to car and picked up gun in view of police). This factor therefore also counsels against attenuation. See Commonwealth v. Tavares, 482 Mass. 694, 707 (2019) (holding Commonwealth failed to establish sufficient attenuation where, among other things, "there were no intervening circumstances between the illegal conduct and the later discovery of the evidence").

The third factor -- purpose and flagrancy of the misconduct -- is a closer call but does not alter the analysis. In assessing purpose, we ask whether the police committed the illegality to obtain the evidence the defendant seeks to suppress. Diaz, 496 Mass. at 215. Here, Jaafar testified that he ordered the defendant out of the vehicle specifically to discuss searching it. As the motion judge found, the officer suspected the passenger of drug distribution and used the exit order to further that investigation. That purposeful exploitation of the unlawful seizure weighs against attenuation. See id.

As to flagrancy, we ask whether police proceeded despite knowing that their actions were unlawful. See Diaz, 496 Mass. at 215. Here, the motion judge made no finding that Jaafar knew the exit order was unlawful. Even assuming the absence of such knowledge, that consideration is not dispositive where, as here, the first two factors weigh decisively against the Commonwealth. See Tavares, 482 Mass. at 707. Cf. Fredericq, 482 Mass. at 83-84 ("we recognize that the illegal police misconduct here was neither purposeful nor flagrant . . . [but this] is not dispositive").

On balance, the Commonwealth has failed to carry its burden of demonstrating that the defendant's consent was sufficiently attenuated from the unlawful exit order to purge the taint of

the constitutional violation. See Commonwealth v. Torres, 424 Mass. 153, 163 (1997) ("consent obtained during an illegal detention is ineffective to justify an otherwise invalid search").[8]  The evidence recovered during the search was therefore inadmissible, and its admission at trial was error.[9]

c.  Harmless error.  Because the defendant moved to suppress the unlawfully obtained evidence, we review the resulting constitutional error to determine whether it was harmless beyond a reasonable doubt.  See Tavares, 482 Mass. at 709.  We conclude it was not.

In our harmless error assessment, we consider, among other factors, the importance of the evidence in the Commonwealth's case.  See Commonwealth v. Seino, 479 Mass. 463, 467-468 (2018).

---

[8] The Commonwealth's reliance at oral argument on indicia of voluntariness -- such as the defendant's lack of hesitation or apparent fear -- to validate the consent is misplaced.  Even where traditional markers of voluntariness are present, consent does not purge the taint of an unlawful seizure absent a meaningful break in the causal chain.  See Commonwealth v. Yehudi Y., 56 Mass. App. Ct. 812, 818 (2002).  Here, there was no such break, and the Commonwealth therefore failed to establish that the defendant's consent was valid, notwithstanding such indicia of voluntariness.

[9] The Commonwealth further justified the subsequent search and seizure of the firearm and ammunition on the ground that the discovery of drugs supplied independent probable cause.  We disagree.  Because the drugs were unlawfully seized, they could not lawfully furnish probable cause for the second search.  See Barreto, 483 Mass. at 724.  The firearm and ammunition were thus likewise obtained in violation of art. 14 and should have been suppressed.

There is no rigid formula; rather, the inquiry turns on the particular record before us. See Commonwealth v. Vasquez, 456 Mass. 350, 360 n.12 (2010). At a minimum, an error cannot be harmless beyond a reasonable doubt "where the over-all strength of the Commonwealth's case radiates from a core of tainted evidence." Commonwealth v. Tyree, 455 Mass. 676, 701-702 (2010). That is precisely the case here.

The tainted evidence was not merely important to the Commonwealth's proof; it was foundational. That is, each conviction rested primarily on the cocaine, fentanyl, firearm, or ammunition unlawfully recovered from the defendant's vehicle. See Commonwealth v. Stewart, 469 Mass. 257, 265 (2014) ("Where the prosecution's case rested primarily on the defendant's possession of these items, the admission of the cocaine and cash was not harmless beyond a reasonable doubt"). Indeed, during closing argument the Commonwealth not only repeatedly referenced the unlawfully obtained drugs, gun, and ammunition, but also conceded that the jury had heard about the cocaine and fentanyl "ad nauseam." See Commonwealth v. Dagraca, 447 Mass. 546, 554 (2006) (improperly procured statements were not harmless beyond reasonable doubt where admissions were introduced in evidence twice during trial and highlighted at closing).

Considering the properly and improperly admitted evidence together, we cannot say "beyond a reasonable doubt" that the

admission of the tainted evidence did not influence the jury or contribute to the verdicts (citation omitted).  Tavares, 482 Mass. at 709.

2.  Further proceedings.  The defendant may be retried only if the evidence admitted at trial, viewed in the light most favorable to the Commonwealth, was sufficient to sustain a guilty verdict; otherwise, principles of double jeopardy bar retrial.  See Tavares, 482 Mass. at 710 n.11; Commonwealth v. Bacigalupo, 455 Mass. 485, 489 (2009).  In making this determination, we do not excise evidence later deemed inadmissible, but instead assess the trial record in its entirety.  See Commonwealth v. Villagran, 477 Mass. 711, 722 (2017).

With respect to the charge of possession of ammunition without an FID card, the evidence was insufficient even when considering the improperly admitted evidence.  To secure a conviction of that offense under G. L. c. 269, § 10 (h) (1), the Commonwealth must prove beyond a reasonable doubt that the defendant lacked an FID card.  See Commonwealth v. Smith, 496 Mass. 304, 318 (2025).  As the Commonwealth concedes, it presented no such evidence.  Retrial on that charge is therefore barred, and a judgment of not guilty shall enter.[10]

---

[10] We note that the trial in this case occurred after our

As to the remaining offenses -- possession of a firearm without a license and possession of cocaine and fentanyl with intent to distribute -- we note that retrial may be barred where the prosecution has no reasonable prospect of curing the evidentiary deficiency created by suppression.  See Commonwealth v. Kirouac, 405 Mass. 557, 564 (1989).  Because that issue was not argued, however, we do not decide it and leave it for consideration on remand.  See Sena v. Commonwealth, 417 Mass. 250, 261 n.8 (1994) (declining to consider "issue on the record submitted to us on appeal").

Conclusion.  The defendant's motion to suppress should have been allowed, and the erroneous admission of the tainted evidence at trial was not harmless beyond a reasonable doubt.  We therefore vacate the defendant's convictions and set aside the verdicts.  A judgment of not guilty shall enter on the charge of possession of ammunition without an FID card.  The remaining charges are remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

decision in Commonwealth v. Guardado, 491 Mass. 666, S.C., 493 Mass. 1 (2023), cert. denied, 144 S. Ct. 2683 (2024).